# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| F.L. ODINSON CROWELL,<br><br>**Plaintiff**<br><br>v.<br><br>E. BEELER,<br><br>**Defendant** | CASE NO. 1:14-CV-01724 AWI BAM<br><br>ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT<br><br>(Doc. No. 38) |

    This is a failure to provide reasonable accommodation case brought by Plaintiff F.L. Odinson Crowell ("Crowell"), a prisoner at the California Substance Abuse and Treatment Facility in Corcoran, against Defendant E. Beeler ("Beeler"), a correctional sergeant. Crowell alleges that he was denied reasonable accommodation for paruresis (aka bashful bladder syndrome), in violation of the Americans with Disabilities Act ("ADA") and the Rehabilitation Act. Beeler now moves for summary judgment on Crowell's claim against her. For the reasons that follow, the motion will be granted.

## **LEGAL FRAMEWORK**

    Summary judgment is proper when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970); Fortyune v. American Multi-Cinema, Inc., 364 F.3d 1075, 1080 (9th Cir. 2004). The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying the portions

of the declarations (if any), pleadings, and discovery that demonstrate an absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007). A fact is "material" if it might affect the outcome of the suit under the governing law. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986); United States v. Kapp, 564 F.3d 1103, 1114 (9th Cir. 2009). A dispute is "genuine" as to a material fact if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. Anderson, 477 U.S. at 248; Freecycle Sunnyvale v. Freecycle Network, 626 F.3d 509, 514 (9th Cir. 2010).

Where the moving party will have the burden of proof on an issue at trial, the movant must affirmatively demonstrate that no reasonable trier of fact could find other than for the movant. Soremekun, 509 F.3d at 984. Where the non-moving party will have the burden of proof on an issue at trial, the movant may prevail by presenting evidence that negates an essential element of the non-moving party's claim or by merely pointing out that there is an absence of evidence to support an essential element of the non-moving party's claim. See James River Ins. Co. v. Herbert Schenk, P.C., 523 F.3d 915, 923 (9th Cir. 2008); Soremekun, 509 F.3d at 984. If a moving party fails to carry its burden of production, then "the non-moving party has no obligation to produce anything, even if the non-moving party would have the ultimate burden of persuasion." Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1105-06 (9th Cir. 2000). If the moving party meets its initial burden, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually exists. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); Nissan Fire, 210 F.3d at 1103. The opposing party cannot "'rest upon the mere allegations or denials of [its] pleading' but must instead produce evidence that 'sets forth specific facts showing that there is a genuine issue for trial.'" Estate of Tucker v. Interscope Records, 515 F.3d 1019, 1030 (9th Cir. 2008).

The opposing party's evidence is to be believed, and all justifiable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Anderson, 477 U.S. at 255; Matsushita, 475 U.S. at 587; Narayan v. EGL, Inc., 616 F.3d 895, 899 (9th Cir. 2010). While a "justifiable inference" need not be the most likely or the most persuasive

inference, a "justifiable inference" must still be rational or reasonable. See Narayan, 616 F.3d at 899. Summary judgment may not be granted "where divergent ultimate inferences may reasonably be drawn from the undisputed facts." Fresno Motors, LLC v. Mercedes Benz USA, LLC, 771 F.3d 1119, 1125 (9th Cir. 2015); see also Holly D. v. Cal. Inst. of Tech., 339 F.3d 1158, 1175 (9th Cir. 2003). Inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Fitzgerald v. El Dorado Cnty., 94 F.Supp.3d 1155, 1163 (E.D. Cal. 2015); Sanders v. City of Fresno, 551 F.Supp.2d 1149, 1163 (E.D. Cal. 2008). "A genuine issue of material fact does not spring into being simply because a litigant claims that one exists or promises to produce admissible evidence at trial." Del Carmen Guadalupe v. Agosto, 299 F.3d 15, 23 (1st Cir. 2002); see Bryant v. Adventist Health System/West, 289 F.3d 1162, 1167 (9th Cir. 2002). The parties have the obligation to particularly identify material facts, and the court is not required to scour the record in search of a genuine disputed material fact. Simmons v. Navajo Cnty., 609 F.3d 1011, 1017 (9th Cir. 2010). Further, a "motion for summary judgment may not be defeated . . . by evidence that is 'merely colorable' or 'is not significantly probative.'" Anderson, 477 U.S. at 249-50; Hardage v. CBS Broad. Inc., 427 F.3d 1177, 1183 (9th Cir. 2006). If the nonmoving party fails to produce evidence sufficient to create a genuine issue of material fact, the moving party is entitled to summary judgment. Nissan Fire, 210 F.3d at 1103.

## FACTUAL BACKGROUND[1]

Crowell is an inmate of the California Department of Corrections and Rehabilitation ("CDCR") and at all times relevant to this litigation, was housed at the California Substance

---

[1] "DSUF" refers to "Defendant's Statement of Undisputed Facts," and PRDSUF refers to "Plaintiff's Responses to Defendant's Statement of Undisputed Facts." Crowell's denials do not include citations to supporting evidence, in violation of Local Rule 260(b), which states in relevant part: "Any party opposing a motion for summary judgment or summary adjudication shall reproduce the itemized facts in the Statement of Undisputed Facts and admit those facts that are undisputed and deny those that are disputed, including with each denial a citation to the particular portions of any pleading, affidavit, deposition, interrogatory answer, admission, or other document relied upon in support of that denial." Further, the arguments of counsel alone are insufficient to raise a dispute of fact. See British Airways Bd. v. Boeing Co., 585 F.2d 946, 952 (9th Cir. 1978) ("The only statements we can find in the record that the crash was caused by a defective fin attachment fitting were made by counsel for BOAC. But legal memoranda and oral argument are not evidence, and they cannot by themselves create a factual dispute sufficient to defeat a summary judgment motion where no dispute otherwise exists.")

Abuse and Treatment Facility ("CSATF") in Corcoran, California. DSUF 1. Crowell states that he has suffered from paruresis his entire life. Crowell Dec. at 2. Crowell further states that he is not able to urinate in front of others and needs to be in a private area away from others in order to urinate.[2] Id. Crowell has never been physically evaluated or diagnosed with paruresis by any medically trained and licensed professional. DSUF 5. Crowell admits this fact, but claims he has been denied any type of evaluation by either Dr. Kokor, his primary care provider in prison, or Mr. Horowitz, a clinical social worker at the prison. PRDSUF 5; Crowell Dec. at 19.

Crowell has been diagnosed with, and currently receives medical treatment for, an enlarged prostate. DSUF 6. Crowell's enlarged prostate has been successfully managed for a lengthy period of time by the prescription drug Terazosin. DSUF 7. Crowell also maintains that he has managed his enlarged prostate by his own diligent efforts to take care of his health and by taking additional supplements. PRDSUF 7. Crowell has spent hundreds if not thousands of dollars to treat his enlarged prostate. Crowell Dec. at 22. Crowell has been taking Saw Palmetto for years to alleviate the symptoms of his enlarged prostate. Id. Crowell states that he has "been prescribed Terazosin since May 8, 2009, for my enlarged prostrate which inhibits free urine flow and bladder function." Crowell Dec. at 3.

There is no record, document, or notation contained within Crowell's CDCR medical records supporting the contention that Crowell requires a medical accommodation in the form of an alternative drug testing method in lieu of the standard urinalysis testing method. DSUF 9. Crowell admits this fact, but claims this is only because his request for an accommodation has been ignored. PRDSUF 9.

On January 18, 2014, Beeler was informed by Officer H. Perez that Crowell had verbally requested an accommodation for the standard urine sample collection procedure due to an alleged medical disability. DSUF 10. Crowell informed custody staff that he had an enlarged prostate and paruresis. Crowell Dec. at 4. The specific accommodation Crowell asked for was to provide his sample outside the presence of others. Id. Beeler directed that Crowell provide a urine sample

---

[2] The Court notes that Crowell admitted that he was in fact able to provide a urine sample in a non-private area (with no accommodation) for the purpose of drug testing, although he states it caused him excruciating pain. PRDSUF 18.

4

in the standard manner provided by the CDCR Department Operations Manual. DSUF 17. Beeler told Crowell that: "If you don't do this it's the same as a dirty test. You will be written up, placed on C status when you're found guilty and you will lose your privileges." Crowell Dec. at 8. Thereafter, Crowell provided his urine sample within approximately seventy minutes, which was within the three-hour time limit allotted for a sample's timely submission. DSUF 18. Crowell maintains that while he was able to provide the sample, he was able to do so only after undergoing excruciating pain, and that the pain lasted for several weeks after January 18, 2014. PRDSUF 18; Crowell Dec. at 11.

As a member of CSATF custody staff, Beeler is not permitted to review an inmate's CDCR medical records. DSUF 14. Aside from basic First Responder training, Beeler possesses no medical training and is unable to diagnose any medical disability that an inmate may suffer from, or prescribe medical accommodations that an inmate may require. DSUF 15.

Beeler maintains that in response to Crowell's request, she reviewed the documents in her possession provided by CSATF medical personnel, which memorialize which CSATF inmates require an accommodation to perform their various life tasks. DUSF 11. Beeler further maintains that she reviewed whether Crowell had been provided or prescribed any medical accommodation by CSATF medical personnel in regards to his providing a drug-testing sample, and that the documents she reviewed on January 18, 2014 indicated that, as of that date, Crowell had not been prescribed or given any such accommodation which would permit her to allow Crowell to either (1) provide a urine sample which deviated from the requirement that the collecting staff member directly observe the flow of urine from Crowell's body into the collection bottle; or (2) provide a hair or blood sample instead of a urine sample. DSUF 12-13. Crowell maintains that Beeler did not review any documents prior to denying his request for a reasonable accommodation, asserting that while he was talking to Beeler, she did not leave to call medical, nor did he observe her reviewing any documents about his condition.[3] Crowell Dec. at 12; PRDSUF 12-13.

---

[3] Even assuming that Beeler did not review any documents before denying Crowell's request for an accommodation, it is undisputed that there is no record, document, or notation contained within Crowell's CDCR medical records supporting the contention that Crowell requires a medical accommodation in the form of an alternative drug testing method in lieu of the standard urinalysis testing method. DSUF 9. Further, whether Beeler reviewed any

5

After the urine test on January 18, 2014, Crowell attempted to discuss paruresis with Dr. Kokor. Crowell Dec. at 15. Dr. Kokor is a physician and surgeon licensed to practice medicine in California, and employed by the CDCR. Kokor Dec. at 1. Dr. Kokor has served as Crowell's primary care provider from Crowell's arrival at CSATF on June 24, 2013 through the present. Id. Dr. Kokor has reviewed Crowell's medical records from January 2008 through March 24, 2016. Id. at 2. Based on this review, Dr. Kokor confirms that Crowell's medical records do not indicate any diagnosis of paruresis. Id. at 5. Further, based on Dr. Kokor's review of Crowell's medical records, Dr. Kokor's interactions with and treatment of Crowell as his primary care provider, and Dr. Kokor's medical training and experience, it is Dr. Kokor's medical opinion that Crowell: "does not suffer from and has not been diagnosed by any CDCR medical professional as suffering from paruresis . . . ." Id. at 6. Further, Dr. Kokor stated that it is his medical opinion that: "Crowell's enlarged prostate does not hinder, inhibit, or in any [way] prevent him from providing a urine sample, upon request, within the three hour period provided by Section 52010.20 of the CDCR Department Operations Manual, and he did not and does not require a medical accommodation in the form of an alternative drug-testing method in lieu of the standard urinalysis testing method . . . ." Id. at 6.

Crowell appealed to the Reasonable Accommodation Panel ("Panel") within CSATF, requesting to be allowed to provide a blood test instead of a urine test. Crowell Dec., Ex. A. The matter was reviewed by the Panel on December 10, 2014. The Panel consists of the ADA Coordinator, the Appeals Coordinator, the Health Care Appeals Coordinator, and the Chief Medical Officer (clinician). Id. "The [Panel] determined that [Crowell's] request for an accommodation to provide a blood test instead of a urine test for random drug testing was not medically necessary. Pursuant to Dr. Enenmoh, Chief Physician and Surgeon, [Crowell's] current medical condition does not prevent him from being able to produce urine for random drug testing." Id.

---

documentation is irrelevant to the Court's analysis of whether Crowell has offered sufficient evidence of a disability under the ADA or the Rehabilitation Act.

Crowell then submitted a second-level appeal to CSATF, but because Crowell "provided no information or evidence at the Second Level of Review to modify the findings of the [Panel]," the appeal was denied. Id. Crowell finally submitted a third-level appeal to the Director of CSATF. Id. The Appeals Examiner reviewed the Panel's findings and noted that Crowell "provided no information or evidence, which would warrant a modification to the institution's decision." Id. Crowell's third-level appeal was denied on April 27, 2015. Id.

On November 3, 2014, Crowell filed a complaint against Beeler in both her individual and official capacities, alleging one cause of action for failure to provide reasonable accommodation under both the ADA and the Rehabilitation Act. Crowell seeks injunctive relief in the form of a reasonable accommodation (preferably in the form of a blood test for drug testing), costs of suit, and reasonable attorneys' fees and costs.

## **DEFENDANT'S MOTION**

*Defendant's Argument*[4]

Beeler argues, *inter alia*, that Crowell's ADA failure to accommodate claim fails because he is not disabled. Crowell has not been diagnosed with paruresis, nor is there any evidence from a medical professional that Crowell requires any accommodation as an alternative to the standard urinalysis drug testing method. While Crowell has been diagnosed with an enlarged prostate, this condition does not prohibit Crowell from providing a urine sample upon request and within a three-hour time period. Beeler argues that Crowell admits that he never sought any medical treatment for paruresis until after January 18, 2014, which is the date upon which his claim against Beeler is founded. Additionally, Beeler argues that Crowell's claim for injunctive relief against her in her individual capacity is not legally viable, because the ADA bars such relief.

*Plaintiff's Opposition*

Crowell argues, *inter alia*, that he is disabled because he has suffered from a life-long disability of paruresis. Crowell claims that the California Department of Corrections gave him an

---

[4] Beeler makes other arguments in support of summary judgment. However, resolution of Beeler's motion, as addressed by the Court below, renders it unnecessary to address Beeler's other arguments.

7

accommodation for his paruresis in 2009 and he also received accommodations from various parole agents in 1990, 1992, 1994, and 1995.[5] Crowell asserts that the reason he never sought documentation for his paruresis prior to January 18, 2014 is because the issue had never arisen prior to this date. Crowell asserts that he could be reasonably accommodated during the drug testing process through the use of blood testing, hair testing, or being placed in a dry cell to be allowed to urinate in private.[6]

*Legal Standard*

I.     Americans With Disabilities Act and Rehabilitation Act of 1973

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. To state a claim under Title II of the ADA, the plaintiff must allege:

> (1) he is an individual with a disability; (2) he is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities; (3) he was either excluded from participation in or denied the benefits of the public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (4) such exclusion, denial of benefits, or discrimination was by reason of [his] disability.

Simmons v. Navajo Cty., Ariz., 609 F.3d 1011, 1021 (9th Cir. 2010) (citation omitted).

Similarly, to establish a violation of Section 504 of the Rehabilitation Act, a plaintiff must show that (1) he or she is an individual with a disability; (2) he or she is otherwise qualified for the benefit or services sought; (3) he or she was denied the benefit or services solely by reason of her handicap; and (4) the program providing the benefit or services receives federal financial assistance. See Weinreich v. Los Angeles County Metro. Transp. Auth., 114 F.3d 976, 978 (9th

---

[5] While Crowell claims that accommodations were made for his paruresis, he does not state what the accommodations were, and he does not provide any documentation of such accommodations. These claims are not relevant to the Court's conclusion below that Crowell is not disabled on the basis of paruresis.

[6] The Court notes that Crowell argues that Dr. Kokor discriminated against him. Crowell's allegation of discrimination against Dr. Kokor is improper here. Crowell already sought to amend his complaint to add Dr. Kokor, and the Court denied his request. See Crowell v. Beeler, 2015 WL 7353889, at *6 (E.D. Cal. Nov. 19, 2015). Specifically, Crowell sought to amend his complaint to add allegations that he spoke with Dr. Kokor about his medical condition and issues with the mandatory urinalysis testing, but Dr. Kokor refused to discuss the situation and dismissed it. See id. Crowell cannot now raise these claims against Dr. Kokor in an opposition to Beeler's motion for summary judgment on his operative complaint in this case. Cf. id. Therefore, the Court will not address the discrimination arguments against Dr. Kokor.

8

Cir. 1997). "Title II of the ADA was expressly modeled after § 504 of the Rehabilitation Act." Duvall v. Cty. of Kitsap, 260 F.3d 1124, 1135 (9th Cir. 2001); see also Zukle v. Regents of Univ. of Cal., 166 F.3d 1041, 1045 n.11 (9th Cir. 1999) ("There is no significant difference in analysis of the rights and obligations created by the ADA and the Rehabilitation Act.").

The ADA defines a disability as "a physical or mental impairment that substantially limits one or more major life activities of such individual; a record of such an impairment; or being regarded as having such an impairment . . . ." 42 U.S.C. § 12102(1)(A)-(C). Because the alleged failure to accommodate occurred after the effective date of the ADA Amendments Act of 2008 (ADAAA), that statute applies to this case. The ADAAA expanded the scope of the term "disability" in the ADA. See Rohr v. Salt River Project Agric. Improvement & Power Dist., 555 F.3d 850, 861 (9th Cir. 2009).[7]

In order to state a claim under the ADA, Plaintiff bears the burden of proving that he or she is "disabled." Bates v. United Parcel Serv., 511 F.3d 974, 988 (9th Cir. 2007) (quoting Nunes v. Wal–Mart Stores, 164 F.3d 1243, 1246 (9th Cir. 1999)). Not every physical or mental impairment or medical condition qualifies as a disability for purposes of the ADA. The impairment or impairments in question must also "substantially limit[ ] one or more major life activities." 42 U.S.C. § 12102(1)(A). "Major life activities" include, but are not limited to: "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A). Major life activities also include the operation of major bodily functions such as: "functions of the immune system, normal cell growth, digestive, bowel, bladder, neurological, brain, respiratory, circulatory, endocrine, and reproductive functions." 42 U.S.C. § 12102(2)(B).

At the summary judgment stage, a plaintiff is not required to present comparative or medical evidence to demonstrate a triable issue of material fact regarding the impairment of a major life activity, if the plaintiff provides other adequate evidence. Rohr, 555 F.3d at 858-59; Gribben v. United Parcel Serv., Inc., 528 F.3d 1166, 1170 (9th Cir. 2008); Head v. Glacier Nw.

---

[7] Abrogated on other grounds in Univ. of Texas Sw. Med. Ctr. v. Nassar, 133 S. Ct. 2517 (2013).

Inc., 413 F.3d 1053, 1058 (9th Cir. 2005). A plaintiff's declaration may suffice if it is not "merely self-serving" and contains "sufficient detail to convey the existence of an impairment." Head, 413 F.3d at 1059. Such testimony, however, must meet the generally required degree of personal knowledge and factual detail needed to withstand summary judgment. See Hexcel Corp. v. Ineos Polymers, Inc., 681 F.3d 1055, 1063 (9th Cir. 2012.) "[C]onclusory declarations are insufficient to raise a question of material fact." Head, 413 F.3d at 1059.

Although 42 U.S.C. § 12132 does not expressly provide for reasonable accommodations, the implementing regulations provide that "[a] public entity shall make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity." 28 C.F.R. § 35.130(b)(7)(i). The duty to provide "reasonable accommodations" or "reasonable modifications" for disabled people under Title II of the ADA arises only when a policy, practice or procedure discriminates on the basis of disability. Weinreich, 114 F.3d at 979.

1. Individual Capacity

Beeler is correct that she may not be held liable in her individual capacity under either the ADA or the Rehabilitation Act. See Stewart v. California Dep't of Educ., 493 Fed. App'x 889, 891 (9th Cir. 2012) ("The district court properly dismissed the ADA and Rehabilitation Act claims against the individual defendants in their individual capacities . . . ."); Garcia v. S.U.N.Y. Health Sciences Center, 280 F.3d 98 (2d Cir. 2001) ("[N]either Title II of the ADA nor § 504 of the Rehabilitation Act provides for individual capacity suits against state officials."); Haney v. Htay, 2017 WL 698318, at *6 (E.D. Cal. Feb. 21, 2017) ("Individual capacity suits against prison employees in their personal capacities are also precluded under the ADA.") Therefore, summary judgment on Crowell's claims against Beeler in her individual capacity will be granted.

2. Determination of "Disability"

Crowell has raised two possible impairments, paruresis and an enlarged prostate. The Court will examine each claimed condition separately.

a. Paruresis

Crowell claims that he has "suffered from Paruresis . . . [his] entire life." Crowell Dec. at 2. It is undisputed that Crowell has never been diagnosed by any medically trained and licensed professional with paruresis, nor are there any medical records before this Court indicating that Crowell suffers from paruresis. PRDSUF 5. Without citing to any cases, Crowell argues in his opposition that his self-diagnosed paruresis constitutes a disability. Crowell's Opp. at 3-4. Crowell's only support for this assertion is his own declaration. See Crowell Dec. at 2.

However, Crowell's self-diagnosis is in direct contradiction to the medical evidence from Dr. Kokor, Crowell's primary care provider.[8] Kokor Dec. at 1. Dr. Kokor has reviewed Crowell's medical records from January 2008 through March 24, 2016. Kokor Dec. at 2. Based on this review, Dr. Kokor confirms that Crowell's medical records do not indicate any diagnosis of paruresis. Kokor Dec. at 5. Further, it is Dr. Kokor's medical opinion that Crowell: "does not suffer from and has not been diagnosed by any CDCR medical professional as suffering from paruresis . . . ." Kokor Dec. at 6. Dr. Kokor's opinion is confirmed by the review of the Panel, including Dr. Enenmoh, Chief Physician and Surgeon, who stated that "[Crowell's] current medical condition does not prevent him from being able to produce urine for random drug testing." Crowell Dec., Ex. A.

It is possible that Crowell seeks to invoke *Rohr*, *Gribben*, and *Head* while only relying on his declaration to show disability. See Rohr, 555 F.3d at 858-59; Gribben, 528 F.3d at 1170; Head, 413 F.3d at 1058. However, these cases are not applicable here. In each of these cases, the plaintiff had a medically diagnosed impairment, and the plaintiff only sought to use his own testimony to demonstrate how that diagnosed impairment affected one or more major life activities. See Rohr, 555 F.3d at 858-59 (the plaintiff was diagnosed as diabetic, and the Court found that: "The record is replete with statements, both by Rohr and his doctors, that to manage his disease Rohr is required to strictly monitor what, and when, he eats."); Gribben, 528 F.3d at

---

[8] Crowell attacks Dr. Kokor's declaration on the basis that Dr. Kokor "only reviewed my medical records." Crowell Dec. at 18. Further, Crowell claims that Dr. Kokor "never spoke to me about [paruresis] and in fact, when I attempted to discuss this issue with him on February 3, 2014, [Dr. Kokor] refused to do so and dismissed me." Id. However, Crowell has failed to show that Dr. Kokor's medical opinion is unreliable here. The fact remains that no medical provider has diagnosed Crowell with paruresis.

11

1170 (the plaintiff was diagnosed with dilated cardiomyopathy and paroxysmal arterial fibrillation, and testified that his diagnosed condition affected his ability to breathe, think, and perform physical activities in temperatures of 90 degrees or more); Head, 413 F.3d at 1058 (the plaintiff was diagnosed with depression/bipolar disorder in early 2001, and testified in his declaration as to how his diagnosed depression/bipolar disorder created a substantial impairment in major life activities such as sleeping and eating).[9] In each of these cases, the issue was not whether the plaintiff had an impairment, but whether and to what extent the diagnosed impairment affected a major life activity. In *Rohr*, *Gribben* and *Head*, there was no attempt by the plaintiff to self-diagnose an impairment.

In contrast, courts have recognized that attempts by a plaintiff to self-diagnose an impairment are insufficient for a claim to go forward. See Felkins v. City of Lakewood, 774 F.3d 647, 651–52 (10th Cir. 2014) (holding, *inter alia*, that Plaintiff's self-diagnosis declaration was inadmissible on summary judgment in ADA case to the extent it diagnosed Plaintiff's medical condition); Heit v. Aerotek Inc., 2016 WL 6298771, at *3-4 (W.D. Wash. Oct. 27, 2016) (stating that "[a] plaintiff cannot self-diagnose her own disability" and finding insufficient evidence of a disability because, "[w]ithout more, Mr. Heit's claim that he has 'shy bladder syndrome' amounts to self-diagnosis, and is insufficient as a matter of law for his claim to go forward under the ADA . . . ."); Hooker v. Adams, 2008 WL 2788404, *8–9 (E.D. Cal. July 18, 2008) (holding: "Plaintiff may not defeat defendants' motion [for summary judgment] by simply tendering his own opinion and the opinions of lay persons that he is dyslexic and has difficulty reading and spelling."), report and recommendation adopted, 2008 WL 3992733 (E.D. Cal. Aug. 25, 2008), aff'd, 370 Fed. Appx. 776 (9th Cir. 2010) (affirming that: "Summary judgment was proper because [Plaintiff] failed to raise a triable issue as to whether he had a cognizable disability such that defendants had the obligation to permit him to possess a type-writer otherwise prohibited by prison rules."); see also Ernst v. Wheeler Const., Inc., 2009 WL 1513106, *5 (D. Ariz. Mar. 17, 2009) (holding that:

---

[9] The two cases that *Head* relied on in holding that a plaintiff's testimony may suffice to establish a genuine issue of material fact also involved plaintiffs with diagnosed impairments who testified as to how their diagnoses affected major life activities. See Fraser v. Goodale, 342 F.3d 1032, 1045 (9th Cir. 2003) (plaintiff was diabetic); McAlindin v. Cty. of San Diego, 192 F.3d 1226, 1231 (9th Cir. 1999), opinion amended on denial of reh'g, 201 F.3d 1211 (9th Cir. 2000) (plaintiff had a diagnosis of anxiety and panic disorder).

"[I]n a case like this one, where medical evidence is actually available, this Court concludes that Plaintiff cannot create an issue of fact by offering only his own affidavit with a self-diagnosis in contradiction of a doctor's contemporaneous diagnosis.")

Here, Crowell has offered only his self-diagnosis as a lay person of paruresis, which is in direct contradiction to the medical evidence from Dr. Kokor, and the review of the Panel, including Dr. Enenmoh. Crowell Dec. at 2, Ex. A; Kokor Dec. at 6. Crowell's self-diagnosis is insufficient to establish a physical impairment. See Felkins, 774 F.3d at 651–52; Heit, 2016 WL 6298771, at *3; Ernst, 2009 WL 1513106, at *5; Hooker, 2008 WL 2788404, *8–9. Based on the evidence before the Court, Crowell does not qualify as "disabled" under the ADA or the Rehabilitation Act on the basis of his self-diagnosed paruresis.[10]

Because Crowell has not demonstrated an impairment of paruresis, summary judgment on all of Crowell's claims based on paruresis is proper.

        b.  Enlarged Prostate

Crowell has an enlarged prostate, which has been managed by the prescription drug Terazosin. DSUF 7. Crowell also maintains that he has managed his enlarged prostate by his own diligent efforts to take care of his health and by taking additional supplements, including Saw Palmetto. PRDSUF 7. Crowell's declaration states that he has "been prescribed Terazosin since May 8, 2009, for my enlarged prostrate which inhibits free urine flow and bladder function." Crowell Dec. at 3.

Crowell describes his enlarged prostate as "inhibit[ing] free urine flow and bladder function." Crowell Dec. at 16. It is not clear whether Crowell is attempting to allege than an enlarged prostate is an impairment affecting a major life activity. See 42 U.S.C. § 12102(1)(A). Crowell's opposition identifies only paruresis as the impairment that constitutes a disability. Opp.

---

[10] The Court notes, without deciding the issue, that it is questionable whether paruresis supports a finding of disability under the ADA, as amended in 2008. Several pre-amendment ADA cases held that paruresis did not constitute a disability. See, e.g., Rathy v. Wetzel, 2014 WL 4104946, at *6 (W.D. Pa. Aug.19, 2014); Terbush v. Massachusetts ex rel. Hampden Cnty. Sheriff's Office, 987 F.Supp.2d 109, 121-22 (D. Mass. 2013); Linkous v. CraftMaster Mfg., Inc., 2012 WL 2905598, at *6 (W.D. Va. July 16, 2012); Balistrieri v. Express Drug Screening, LLC, 2008 WL 906236, at *5 (E.D. Wisc. March 31, 2008); Oyague v. State, 2000 WL 1231406, at *3 (S.D.N.Y. Aug. 31, 2000); but see, e.g., Carey v. Arizona Dep't of Corr., 2010 WL 148211, at *3 (D. Ariz. Jan. 12, 2010) (Without analyzing the issue of disability under the ADA, finding that "liberally construed," the plaintiff, who alleged a disability of paruresis, had "stated a claim under the ADA" in his amended complaint.)

1   at 3-4.  However, in response to DSUF No. 3, which states: "Plaintiff has never been diagnosed by
2   an CDCR medical personnel as having any medical condition that requires any form of disability
3   accommodation related to urinalysis," Crowell responded: "Deny.  Plaintiff has been diagnosed
4   with an enlarged prostate which does affect his ability to urinate."  PRDSUF 3.  To the extent that
5   Crowell is relying on an enlarged prostate, the Court is not convinced.

6         First, Crowell does not argue that his enlarged prostate affects a major life activity in any
7   meaningful way.  As stated above, he does not even argue in his opposition that his enlarged
8   prostate is a disability.  Opp. at 3-4.  The undeveloped nature of Crowell's argument is alone
9   grounds to reject it.  See John-Charles v. California, 646 F.3d 1243, 1247 n.4 (9th Cir. 2011);
10  United States v. Kimble, 107 F.3d 712, 715 n.2 (9th Cir. 1997); see also Jordan v. Binns, 712 F.3d
11  1123, 1134 (7th Cir. 2013).

12        Second, Crowell's declaration has not provided any facts about how his treated enlarged
13  prostate actually affects his urine flow and bladder function.  Crowell does not declare that his
14  enlarged prostate prevents him from urinating in front of others for a drug test, nor does he declare
15  that his enlarged prostate prevents him from providing a urine sample within 3 hours.  Therefore,
16  Crowell's declaration lacks the necessary factual detail to withstand summary judgment.  See
17  Hexcel Corp., 681 F.3d at 1063; Head, 413 F.3d at 1059.  In contrast, Dr. Kokor has stated that it
18  is his medical opinion that: "Crowell's enlarged prostate does not hinder, inhibit, or in any [way]
19  prevent him from providing a urine sample, upon request, within the three hour period provided by
20  Section 52010.20 of the CDCR Department Operations Manual, and he did not and does not
21  require a medical accommodation in the form of an alternative drug-testing method in lieu of the
22  standard urinalysis testing method . . . ."  Kokor Dec. at 6.  Dr. Kokor's opinion is confirmed by
23  the review of the Panel, including Dr. Enenmoh, Chief Physician and Surgeon, that "[Crowell's]
24  current medical condition does not prevent him from being able to produce urine for random drug
25  testing."  Crowell Dec., Ex. A.

26        Based on the evidence before the Court, Crowell does not qualify as "disabled" under the
27  ADA or the Rehabilitation Act on the basis of his enlarged prostate.  Because Crowell has not
28  shown that his enlarged prostate constitutes a disability, summary judgment on all of Crowell's

14

claims based on an enlarged prostate is proper.[11]

**ORDER**

Accordingly, IT IS HEREBY ORDERED that:

1. Beeler's motion for summary judgment is GRANTED; and
2. The Clerk shall enter judgment in favor of Beeler and CLOSE this case.

IT IS SO ORDERED.

Dated:   March 30, 2017                                   _____
                                                          SENIOR DISTRICT JUDGE

---

[11] The Court notes that Crowell, without citing to any legal authority, also argues that he was excluded from participation in or otherwise discriminated against with regard to a public entity's service, programs, or activities. However, because Crowell has failed to establish that he qualifies as disabled, the Court need not address Crowell's further arguments here.